IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| Phillip Michael Hook,<br><br>Plaintiffs,<br><br>v.<br><br>Tim Rave, in his official capacity as President of the South Dakota Board of Regents, Sheila K Gestring, in her official capacity as President of the University of South Dakota, and Bruce Kelley, in his official capacity as Dean of the University of South Dakota College of Fine Arts,<br><br>Defendants. | 4:25-cv-04188-KES<br><br><br><br>**OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER** |

The facts are still quickly developing in this case. No discovery has been completed. The Defendants have not been served and have had notice of this action for roughly twenty-four hours. Regardless, Plaintiff's motion plainly fails to meet the legal standards to secure a temporary restraining order (TRO). Accordingly, the motion should be denied.

## BACKGROUND

Although no discovery has taken place, certain facts are undisputed and a matter of public record. On September 10, 2025, at a college campus in Utah, Charlie Kirk was assassinated in an act of political firearm violence, leaving his wife without a husband and child without a father. *See* FBI Salt Lake City, Remarks Delivered by Special Agent in Charge Robert Bohls at the September 11, 2025, Press Conference Regarding the Shooting At Utah Valley University, September 11, 2025, available at *https://www.fbi.gov/contact-us/field-offices/ saltlakecity/news/remarks-delivered-by-special-agent-in-charge-robert-bohls-at-the-september-*

1

*11-2025-press-conference-regarding-the-shooting-at-utah-valley-university*. In the days that followed, the Department of Justice, and the people of this nation, were amid a manhunt for a suspect in this national tragedy. *Id.* Indeed, the FBI was offering a $100,000 reward for information leading to the identification and arrest of the persons responsible for the assassination of Charlie Kirk.  FBI Salt Lake City, Reward of Up to $100,000 for Information Leading to the Identification, Arrest of Individual(s) in Murder of Charlie Kirk, September 11, 2025, available at *https://www.fbi.gov/contact-us/field-offices/saltlakecity/news/reward-of-up-to-100000-for-information-leading-to-the-identification-arrest-of-individuals-in-murder-of-charlie-kirk*.

The suspected assassin was eventually apprehended, but the nation continued to mourn. On September 10, 2025, the President of the United States ordered that flags be flown at half-staff.  President Donald J. Trump, Honoring the Memory of Charlie Kirk, September 10, 2025, available at *https://www.whitehouse.gov/presidential-actions/2025/09/honoring-the-memory-of-charlie-kirk/*.  Likewise, the Governor of the State of South Dakota ordered flags to be flown at half staff in honor of Charlie Kirk. *See* governor Larry Rhoden, Flags at Half-Staff Statewide in Honor of Charlie Kirk, September 10, 2025, available at *http://news.sd.gov/news?id=news _kb_article_view&sys_id=33cf2a1f47b76690fc1303dc426d432c*.

During this national tragedy, the plaintiff in this lawsuit had a social media account on Facebook.  Although that Facebook page is currently not publicly available, at the time it was very publicly advertised that he was a professor at the University of South Dakota, as can be seen as follows:



# Michael Hook

**1.1K** friends • **2** mutual

"Vision is the art of seeing what is invisible to others."
Jonathan Swift



Posts   Photos   Reels

## Details

- pmhook_studio · 532 followers (+2 links)
- Professor of Art at **University of South Dakota**
- Studied Bachelor of Fine Art, Painting at Columbia College
- Studied Master of Fine Art, Painting at University of Missouri
- ··· See Michael's About Info



On the same page that displays his affiliation with the University of South Dakota, Professor Hook posted the following message:



> Okay. I don't give a flying fuck about this Kirk person. Apparently he was a hate spreading Nazi. I wasn't paying close enough attention to the idiotic right fringe to even know who he was. I'm sorry for his family that he was a hate spreading Nazi and got killed. I'm sure they deserved better. Maybe good people could now enter their lives. But geez, where was all this concern when the politicians in Minnesota were shot? And the school shootings? And Capital Police? I have no thoughts or prayers for this hate spreading Nazi. A shrug, maybe.

In short, Professor Hook chose to use the same social media platform where he advertises himself to be a Professor at the University of South Dakota to decry the murdered victim of a national tragedy as a Nazi, among other vulgar or profane language. The post angered many people, both internal and external to the University of South Dakota.

Not surprisingly, as the nation was mourning, over the days to follow, hundreds of calls and messages were made to the Board of Regents and/or the University of South Dakota commenting negatively regarding the comment or calling for the removal of Professor Hook. Among those messages included one from the Speaker of the South Dakota House of Representatives, as is documented in Plaintiff's Exhibit and a social media message from Governor Rhoden's account was also made. There is no evidence presented that those communications alone influenced any action taken by any defendant.

On September 12, 2025, a notice of intent to terminate the Plaintiff's contract as a professor was delivered. At the time the letter was delivered, Professor Hook's contract had not been terminated, and no determination would be made until after the Pre-Discipline Conference as set forth in Board of Regent Policy 4.4.8 section C.4.2.1. Indeed, there is no certainty at this time that he will be terminated. The Pre-Discipline Conference is set for September 29, 2025, and a final decision will not be made until that conference is concluded. An administrative appeal process is thereafter set forth in Board Policy 4.4.9. As Professor Hook has not yet been terminated, he has not exhausted any administrative remedies.

## LEGAL STANDARD

"[T]he standards for issuing either a temporary restraining order [(TRO)] or a preliminary injunction in this circuit are set out in the seminal decision of *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 & n.5 (8th Cir. 1981) (en banc)." *United States v. Barnes*, 912 F. Supp. 1187, 1192 (N.D. Iowa 1996). The *Dataphase* factors are: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020).

The movant bears the burden of proving these factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). That burden is "heavier" when an injunction would "in effect give the movant substantially the relief it would obtain after a trial on the merits," *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 790 (8th Cir. 1989), because the existence of an adequate legal remedy cuts against a showing of irreparable harm. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009) ("Irreparable harm occurs when a party has no adequate remedy at law ..."). The failure to show irreparable harm is sufficient, on its own, to deny a TRO.

*See Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013); *see also Watkins Inc.*, 346 F.3d at 844.

## ARGUMENT

### 1. There is no irreparable harm.

As stated above, a TRO is appropriately denied if a movant cannot prove irreparable harm. In this case, there is a very clear legal remedy if his claim is indeed found to be meritorious (assuming Plaintiff is terminated): reinstatement and back pay. Indeed, the plaintiff cites *only* prior restraint case law for his argument that there is irreparable harm in this case. He is right that any amount of First Amendment violation is irreparable in a prior restraint case. But, this is not a prior restraint case. In fact, the speech at issue was admittedly removed from social media by the Plaintiff voluntarily.

Instead, this case is pleaded as a retaliation case. Plaintiff is alleging that he is being retaliated against for prior protected speech in an employment context. Case law does not support the finding of irreparable harm and issuance of a TRO in employment law cases where reinstatement and back pay serve as a sufficient legal remedy, as is the case here. *See Equal Emp. Opportunity Comm'n v. BNSF Ry. Co.*, No. 8:21-CV-369, 2022 WL 1265938 (D. Neb. Apr. 28, 2022).

### 2. The state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant

As stated above, even if the claim is meritorious, there is no risk of irreparable harm to the plaintiff. However, there is a substantial risk of irreparable harm to the University and the Defendants. As a starting point, the University has not terminated Plaintiff, and he is still being paid while on temporary leave. In fact, it's not clear what exact relief is being sought by the

Plaintiff. It appears that Plaintiff is not seeking to preserve the status quo, which would be to leave the Plaintiff on administrative leave, but instead to seek affirmative injunctive relief by way of a TRO hearing on 24-hour notice to prevent a Pre-Discipline Conference to determine whether termination is appropriate. Defendants submit such is inappropriate. Likewise, it would be inappropriate to require the University to maintain Plaintiff on paid administrative leave in perpetuity.

Entering a TRO prior to the Pre-Discipline Conference would prevent the Regents and the University from holding a conference and moving forward with fact finding necessary to make a final decision in this matter. It is possible this case could become moot simply by allowing Regent policy to take its course, and if not moot, it allows for factual development which is appropriate for resolution of this case. Even if this case is "ripe" for purposes of justiciability, this factor weighs in favor of the Defendants at this stage.

3. **Likelihood of Success on the Merits.**

Although this factor is likely premature to address prior to the University making a final determination on termination and is not necessary to address if Plaintiff fails to demonstrate irreparable harm, Defendants submit that Plaintiff has failed to meet his burden on this factor.

Indeed, Plaintiff overstates case law regarding First Amendment protection as it relates to social media speech. Several cases have found that the *Pickering* factors are applicable to retaliation claims by public employees in making social media posts. In balancing the *Pickering* factors, the Court must determine whether the speech at issues created sufficient disruption or disharmony in the workplace. *See Hedgepeth v. Britton*, ___ F.4th ___, No. 24-1427, 2025 WL 2447077 (7th Cir. Aug. 26, 2025); *Gustilo v. Hennepin Healthcare Sys., Inc.*, No. 0:22-CV-00352-SRN-DJF, 2025 WL 2539116, at *21 (D. Minn. Sept. 4, 2025). Of course, at this stage of

litigation, this Court and the parties are not in a position to appropriately apply the *Pickering* factors, which are fact sensitive. Plaintiff has not had a Pre-Discipline Conference, and no discovery has been completed since the Defendants have not even been served. However, at this stage, it is certainly the Defendant's intent to invoke *Pickering*. Frankly, it borders on the absurd to simply assume, without evidence, that Plaintiff, while displaying he was a professor at the University of South Dakota, publicly using profane language calling Charlie Kirk a Nazi, while flags were being flown at half-staff in his honor because he was assassinated on a college campus, would not create a level of internal (including alumni, parents, and students) and external disruption to the University sufficient to trigger *Pickering* analysis. Indeed, University faculty members are expected by Board of Regents policy and the public to teach and show by example "that members of stable, effective and prosperous social organizations observe norms of conduct under which all participants treat one another civilly and carry out their respective tasks in a constructive and informed manner." *See* SDBOR Policy 4.4.3 Section C.5, available at *https://public.powerdms.com/SDRegents/tree/documents/1726896*. Failure to observe the higher standards of civil and informed discourse expected of a faculty member can be significantly disruptive, including undermining the public trust in institutions of higher education.

Plaintiff has presented no evidence or argument regarding this issue, and, although the burden of proof on that issue will eventually shift to the Defendants, at the TRO stage, the burden is plainly on the Plaintiff. He has not met that burden. Accordingly, this factor weighs in the favor of the Defendants.

### 4. Public Interest.

The final *Dataphase* factor is whether an injunction would be in the public interest. The Supreme Court has articulated that it is generally not in the public interest for courts to second-

guess the academic decisions of a college or university. *See Widmar*, 454 U.S. at 276, 102 S.Ct. 269. Although the public interest also favors free expression, Plaintiff has not demonstrated a violation of his First Amendment rights. Thus, the public interest does not tip in favor of granting the TRO.

## CONCLUSION

In accordance herewith, Defendants submit that the Motion for a Temporary Restraining Order should be denied.

Dated this 24th day of September, 2025.

MAY, ADAM, GERDES & THOMPSON LLP

BY: _____/s/ Justin L. Bell_____
JUSTIN L. BELL
*Attorneys for Defendants*
503 South Pierre Street
P.O. Box 160
Pierre, South Dakota 57501-0160
Telephone: (605)224-8803
Fax: (605)224-6289
*jlb@mayadam.net*